**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **N.M. b/n/f SHERRY MCCARTHY** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 1:19-cv-00214** |
| | § | |
| **MARINE MILITARY ACADEMY,** | § | |
| **Defendant.** | § | |

**FIRST ORIGINAL COMPLAINT**

**NOW COMES** N.M. by his next friend and mother, Sherry McCarthy (collectively "the Plaintiffs") and files this their *First Original Complaint* alleging that the Marine Military Academy (hereinafter referred to as the "Academy" or "Defendant"), violated the various rights of Plaintiffs as more specifically pled herein. Plaintiffs reserve the right to replead if new claims and issues arise upon further development of the facts, as permitted by law. In support thereof Plaintiffs would respectfully show this Court the following:

## I. BRIEF INTRODUCTION TO THE CASE

1.    N.M. was accepted into the Marine Military Academy in August 2016. Upon arrival, he was assigned a roommate who hit, kicked, punched, and threatened to rape N.M. daily. After the first month of bullying, N.M. got a new roommate, but this roommate was also a bully. The staff at the Academy were on notice to this bullying, being informed by Ms. McCarthy and N.M. himself. However, instead of remedying the situation, N.M. was retaliated against and was forced to leave the Academy.

2.    Because of the events at the Academy, he now has to receive special education services. He was catatonic for a time, and he is currently at a high risk for recurrence of catatonia. He also suffers from major depressive disorder and anxiety. His various trauma affects his life in

many ways.

3.      Due to the various acts and omissions briefly noted above and all more fully delineated below, N.M. brings forth a claim against the Marine Military Academy, that his civil rights pursuant to Title IX of the Education Amendments of 1972 were violated in two manners. First, because the Academy did not stop the harassment and second, by because they did not attempt to remedy the effects of the sexual harassment N.M. experienced. Additionally, Plaintiffs bring forth common and state law claims.

4.      For families, there is nothing sadder than witnessing their children suffer. To give meaning to their child's experience, they feel compelled to tell their story. They feel a duty to do so in the hope the presentation of their story will prevent the same from happening to another family. In the course of this telling, these victims benefit from a healing effect. The healing and empowering effect is even more pronounced when the story is told before a neutral tribunal, as Plaintiffs chose to do in his case, so that the bright light and sanitizing effect of federal law is focused on this important issue and the Marine Military Academy's failures.

## II. JURISDICTION

5.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and 1343 because the matters in controversy arise under the laws of the United States.

6.      In addition, jurisdiction is conferred upon this Court pursuant to 20 U.S.C. §1681-1688, Title IX of the Education Amendments of 1972, et seq., and the federal regulations issued thereunder. Last, this Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1369.

## III. VENUE

7.       Under 28 U.S.C. §1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiff's claims occurred in the Southern District of Texas, Brownsville

Division.

## IV. PARTIES

8.     N.M. is a resident of San Antonio, Texas. He lives with his mother, Sherry McCarthy. They

currently live at 14007 Tahoe Vista, San Antonio, Texas, 78253.

9.     The Marine Military Academy is a private college preparatory academy organized under the

laws of the State of Texas. At all times pertinent to this case, N.M. was a student at the

Marine Military Academy. They may be served by and through their Superintendent,

Colonel R. Glenn Hill at the Texas State Marine Academy at 320 Iwo Jima Boulevard,

Harlingen, Texas 78550.

## V. STATEMENT OF FACTS

A.     ABOUT THE MARINE MILITARY ACADEMY

10.    The Marine Military Academy was created by Captain William A. "Bill" Gary in 1963. His

vision was to create a place where the ideology of the Marine Corps, including concepts like

leadership, discipline, and moral values, could be shared with adolescent males.

11.    The Academy is an all-boys, military boarding school located on a military base in

Harlingen, Texas.

12.    In 1966, six cadets became the Academy's first graduating class. Since then, the Academy

has continued to teach young men the key concepts of the Marine Corps.[1]

13.    The Academy aims to "administer positive guidance and instruction in a safe, structured

environment removed from distractions that fosters growth of mind, body and spirit and,

---

[1] https://www.mma-tx.org/about-us/History-of-MMA/

First Original Complaint                                                                 3

ultimately, inspires transformation".[2]

14.    The Academy receives federal funds to pay for military uniforms and the Reserve Officers'
Training Corps (ROTC) program.

B.    ABOUT N.M.

15.    N.M. was born on August 4, 2001. He is currently 17 years old.

16.    N.M. used to enjoy playing basketball and playing video games.

17.    The Marine Military Academy advertises itself as being an institution with 100% college
acceptance rate. This appealed to N.M., and he had high expectations and aspirations going
into the Academy. Unfortunately, the Academy did not live up to those expectations.

C.    N.M.'S FIRST YEAR EXPERIENCE AT THE ACADEMY

18.    In August 2016, N.M. was accepted into the Marine Military Academy. He started attending
the Academy that same month.

19.    During the first four weeks at the Academy, all new students are considered Plebes. This
means that they have no access to electronics and no way to privately communicate with
their parents.

20.    N.M.'s first days at the Academy were positive. He sent his mother a letter stating that he
was "having a great time at [the Academy]" and that his roommate was a "BIG HELP!" The
letters were being read by the Drill Instructors who were scanning them.

21.    Because he knew his letters were being read, N.M. did not tell his mother about the "hazing
culture" at the Academy. It was commonplace for older students to bully the younger and
newer students. This hazing, or bullying, was often not met with correction because it was

---

[2]https://www.mma-tx.org/about-us/At-a-Glance/

viewed as normal behavior among the Academy's students.

22.     "Bryan S." was his first roommate and verbally abused N.M. every day during the first four weeks they were new "plebes". After one month's time, Bryan became N.M.'s direct superior per the chain of command.

23.     N.M. himself made complaints to school directors and was reprimanded for breaking the chain of command. He was told to report complaints to his direct superior, who in this case, was Bryan S., the perpetrator. As such, the severity of the bullying increased.

24.     About a month into the semester, N.M. got a new roommate named "Kenny V" who also proved to be a bully. In addition to subjecting N.M. to verbal abuse, he hit, punched, kicked and threatened to rape him on daily basis for two months.

25.     N.M. became increasingly fearful for his safety and began sleeping with a broom handle.

26.     N.M. was not getting any help from people like the school directors, who were outside of his chain of command, so he informed his mother about the bullying. He revealed that since his initial letter, things had changed. He did not initially feel comfortable telling her that he was being bullied because, as previously noted, he knew the Drill Instructors were reading the cadets' letters and feared retaliation.

27.     Ms. McCarthy traveled to the Academy and had a meeting with two drill instructors, Sgt. Charles and 1st Sgt. Hernandez. N.M. was also present during the meeting. He and his mother spoke to the instructors about the severity of the bullying. After his mother left for home, N.M. was again reprimanded for breaking the chain of command and nothing was done to stop the persistent bullying.

28.     During a basketball game, other cadets named Christian and Jagneau were being physically aggressive to N.M. There were no referees and no staff supervision during the game.

29.     In addition to his roommates, N.M. was targeted by another cadet. "R." was a football player who thought it was funny to publically humiliate N.M. by giving him bear hugs and lifting him off the ground in front of everyone.

30.     N.M. wrote to his mother that R., along with four other cadets, ambushed and assaulted him.

31.     After this incident, N.M. feared that if he kept complaining, the Academy staff and other cadets would retaliate against him. As such, N.M. stopped reporting it and not surprisingly things worsened.

D.      SUMMER AFTER THE FIRST YEAR AND THE SECOND YEAR AT THE ACADEMY

32.     Over the summer, N.M.'s mood and condition fluctuated. He continually expressed to his mother that he was not sure if he should return to the Academy.

33.     As the beginning of the new year approached, N.M. became withdrawn and sullen.

34.     N.M. returned to the Academy for a second year but

35.     Five days into the semester, N.M. called his mother and told her that he was put on suicide watch by administration.

36.     Ms. McCarthy confirmed with the Academy that N.M. was put on suicide watch.

37.     Because N.M. was only being asked "what was wrong" instead of being assessed by a mental health professional, Ms. McCarthy traveled to the Academy and removed N.M from the school environment because nothing was being done to find out what was wrong other than questioning by the staff.

38.     After getting Nicholas back to San Antonio, he struggled to communicate and eventually to function at all.  He was in and out of psychiatric facilities until finally being referred to Laurel Ridge by another facility for ECT.  Laurel Ridge will not do ECT on a minor but they did admit him. He was later transferred to their long term care section

39.   taken into a psychiatric facility, Laurel Ridge Treatment Center. He was diagnosed with catatonia[3].

40.   The Academy put N.M. on a "hold" status. Soon after, Ms. McCarthy sent an email to formally and officially withdraw N.M. from the Academy.

41.   N.M. is at a high risk for recurrence of catatonia.

42.   N.M. also suffers from major depressive disorder and anxiety.

43.   N.M. has lost over a year of his life because of the acts and omissions of the Academy. He was unable to make the high school basketball team after playing Varsity as a sophomore.

44.   He suffers from symptoms similar to that of Post Traumatic Stress Disorder ("PTSD").

45.   Additionally, he was supposed to graduate high school, but that could not happen. He has tried to take the Scholastic Aptitude Test ("SAT") multiple times, but he is unable to complete the test.

E.    THE ACADEMY WAS INDIFFERENT TO THE HARASSMENT N.M. EXPERIENCED

46.   The Academy sent a letter to Ms. McCarthy stating they would investigate the allegations that N.M. was a victim of harassment, but the scope of the investigation did not include his first year at MMA. Moreover, the investigation was not commensurate with Title IX regulations, relevant Title IX jurisprudence, Office of Civil Rights Guidelines, Texas law or the Academy's Policies and Procedures. Specifically, when a staff member receives a complaint from any person, that a student may have been a victim of bullying, harassment or assault:

    a.    First the Academy has an absolute duty to tell the parents of any problem where their

---

[3] Catatonia is a group of symptoms that usually involve a lack of movement and communication, and also can include agitation, confusion, and restlessness. Catatonia can be treated, but if it's not, it can lead to life-threatening problems.

child could be the victim of bullying, harassment, assault or even sexual assault;

b. The complaint must be reduced to writing and given to the Academy's Title IX Coordinator, or their designee or Superintendent;

c. They must Investigate the allegations;

d. The investigation requires that all witnesses be interviewed;

e. That all statements be reduced to writing;

f. That a written report be completed;

g. It requires that the investigation be impartial;

h. The family is to be provided a copy of the final report;

i. If the family is unhappy with the findings, they must be given information about the right to appeal the findings through the Academy's Internal Grievance Policies; and

j. In addition, the family is to be given information about filing a complaint with the Department of Education's *Office of Civil Rights.*

47. The Academy also has a duty to provide an intervention for the victim based upon a constellation of all the facts. For instance the Academy may offer the student who was victimized any of the following:

a. Counseling;

b. Psychological testing;

c. Social skills training and/or

d. Self-advocacy training;

e. Referral to community resources;

f. A one-to-one paraprofessional to provide monitoring of the Victim;

g. A one-to-one paraprofessional to provide monitoring of the Perpetrator;

    h.     An increase in supervision at "hot spots;"

    i.     Removal of the perpetrator from the same classes as the victim or even;

    j.     Removal of the perpetrator from the same school as the victim.

48.    Further, even after an investigation is completed, the Academy must have a system in place to assess how well or how poorly were the effectiveness of interventions provided, if any.

H.    THE POSTSCRIPT

49.    The Academy failed to follow all the various requirements noted above.

50.    The Academy attempted to provide a safety plan for N.M. but it failed.

51.    In fact the Academy failed over and over again.

52.    The acts and omissions of the Marine Military Academy made him more vulnerable to the bullying and harassment he experienced.

53.    The Marine Military Academy was indifferent to the rights N.M. is otherwise accorded under Title IX of the Educational Acts of 1972.

## VI. <u>TITLE IX</u>

54.    The Marine Military Academy receives federal funds for uniforms and to fund their *Reserve Office Training Corps* ("ROTC") program. As such, the Academy follows the requisites Title IX of the Education Amendments of 1972 ("Title IX"), 86 Stat. 373, as amended, 20 U.S.C. §1681 *et seq.* Title IX specifically notes that a private entity may be liable under Title IX for discrimination based upon gender and gender stereotypes. The claimant must be a member of a protected class; must be bullied and harassed because of membership in that class; that such bullying and harassment be severe and pervasive, that the entity be on notice as to the allegations; that it be deliberately indifferent to those allegations and the victim must have experienced a deprivation of educational opportunities and/or experienced other

damages. N.M. easily satisfies all these threshold requirements and seeks recovery accordingly.

55.     In addition and in the alternative to the above, the Defendant failed to follow the relevant rules and regulations promulgated by the United States Department of Education as to N.M., and as such N.M. has a private cause of action against Defendant for such failures.

## VII. NEGLIGENCE

56.     Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

A.      GENERAL NEGLIGENCE

57.     Defendant owed a legal duty to N.M.

58.     Defendant breached that duty.

59.     The breach proximately caused injury to N.M.

B.      NEGLIGENT HIRING, TRAINING, AND SUPERVISION

60.     Defendant owed N.M. a duty to hire, train, and supervise competent employees.

61.     Defendant breached that duty.

62.     The breach caused injury to N.M.

C.      GROSS NEGLIGENCE

63.     Plaintiffs would show that the acts and/or omissions of Defendant complained of above constituted gross negligence.

64.     These acts and/or omissions were representative of conscious indifference to the welfare of N.M., and as such, he seeks recovery of exemplary damages against Defendant, by way of example and of punishment in order to discourage future misconduct by those similarly situated to Defendant.

First Original Complaint                                                                                            10

## VIII. <u>INTENTIONAL INFLICTION OF</u><br><u>SEVERE MENTAL AND EMOTIONAL DISTRESS</u>

65.    Plaintiffs incorporate by reference all of the above related paragraphs, as well as those below, with the same force and effect as if fully set forth herein.

66.    Plaintiffs allege that N.M. was a victim of *Intentional Infliction of Severe Mental and Emotional Distress*, due to the acts and omissions by Defendant.

67.    Plaintiff N.M. is a person.

68.    The Defendant acted intentionally and recklessly.

69.    The Defendant's conduct was extreme and outrageous.

70.    The Defendant's conduct proximately caused N.M. emotional distress.

## IX. <u>RESPONDEAT SUPERIOR</u>

71.    Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

72.    The Marine Military Academy ratified the acts and omissions of its employees, staff, and representatives.

73.    At all times when the employees of the Academy committed the bad acts set forth and described herein, such employees were acting as representatives of the Academy.

74.    The Academy is responsible for the acts and omissions of its employees, staff, and representatives pursuant to the theory of *Respondent Superior.*

## X. <u>PROXIMATE CAUSE</u>

75.    Plaintiffs incorporate by reference all allegations in the above related paragraphs with the same force and effect as if herein set forth. Each and every, all and singular of the foregoing acts and omissions, on the part of the Marine Military Academy, taken separately and/or

collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages experienced by Plaintiffs, as set forth herein.

## XI. RATIFICATION

76. The Marine Military Academy, ratified the acts, omissions and customs of all school administrators, educators, personnel, staff and agents. As a result, the Defendant is responsible for the acts and omissions of all school administrators, educators, personnel, staff and agents.

77. By extension, the Marine Military Academy is responsible for the acts and omissions by members of the Marine Military Academy pursuant to the theory of *Respondeat Superior*.

## XII. SPOLIATION

78. Plaintiffs hereby require and demand that Devereux preserve and maintain all evidence pertaining to any claim or defense related to the incidents made the basis of this complaint or the damages resulting therefrom, including statements, photographs, videotapes, audiotapes, surveillance, security tapes, business or medical records, incident reports, telephone records, emails, text messages, electronic data/information, and any other evidence regarding the assault or other violations set forth herein.

79. Failure to maintain such items will constitute "spoliation" of evidence, which will necessitate use of the spoliation interference rule—an inference or presumption that any negligent or intentional destruction of evidence was done because the evidence was unfavorable to the spoliator's case.

## XIII. DAMAGES

80. Plaintiffs incorporate by reference all of the above related paragraphs, as if fully set forth herein.

81.   As a direct and proximate result of the Defendants' conduct, N.M. and his mother have suffered injuries and damages, which they may seek compensation for, all within the jurisdictional limits of this court, including but not limited to the following:

    a.   Hostile educational environment;

    b.   Deprivation of equal access to educational opportunities;

    c.   Deprivation of non-educational opportunities at the school;

    d.   Aggravation of any pre-existing condition;

    e.   Past mental anguish;

    f.   Future mental anguish;

    g.   Loss of opportunity;

    h.   Loss of companionship;

    i.   Past medical expenses;

    j.   Future medical expenses;

    k.   Injury to reputation;

    l.   Parental out-of-pocket expenses; and

    m.   Parental wages lost or affected due to expending time and energies attending to these incidents.

82.   By reason of the above, the subject of this lawsuit, Plaintiffs have suffered losses and damages in a sum within the jurisdictional limits of the Court and for which this lawsuit is brought.

## XIV. ATTORNEYS FEES

83.   Plaintiffs incorporate by reference all of the above related paragraphs, as if fully set forth herein.

84.     It was necessary for Plaintiffs to hire the undersigned attorneys to file this lawsuit. Upon

judgment, Plaintiffs are entitled to an award of attorney fees and costs pursuant to Title IX

and 42 U.S.C. § 2000d et seq.

### XV. DEMAND FOR A JURY TRIAL

85.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues

in this matter.

### PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray in the manner and particulars

noted above, and in an amount sufficient to fully compensate her for the elements of damages

enumerated above, and enter a judgment in an amount sufficient to fully compensate them for the

elements of damages enumerated above, judgment for damages, recovery of attorney's fees and costs

for the preparation and trial of this cause of action, and for its appeal if required, pursuant to 42

U.S.C. §1988 and 42 U.S.C. §2000d et seq. and Title IX; together with pre- and post-judgment

interest, and court costs expended herein, as well as the equitable issues noted above; and for such

other relief as this Court in equity, deems just and proper and for such other relief as the Court may

deem just and proper in law or in equity.

Respectfully submitted,
Cirkiel & Associates, P.C.
/s/ Martin J. Cirkiel
Mr. Martin J. Cirkiel, Esq.
State Bar No.: 00783829
1901 E. Palm Valley Boulevard
Round Rock, Texas  78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
marty@cirkielaw.com [Email]

ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on February 18, 2019, a true and correct copy of the above and forgoing document filed with the Clerk of the Court for the U.S. District Court, Western District of Texas using the CM/ECF system which will send notification of such filing to the following Counsel of record:

Col R. Glenn Hill
Superintendent of Marine Military Academy
320 Iwo Jima Blvd
Harlingen, TX 78550
(956) 421-9221 [Telephone]
hill@mma-tx.org [Email]

/s/ Martin J. Cirkiel
Martin J. Cirkiel